UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE LUCUS,[1]<br><br>    Plaintiff,<br><br>v.<br><br>CRAIG KOENIG, et al.,<br><br>    Defendants. | Case No. 19-07938 BLF (PR)<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND** |

Plaintiff, a former California inmate who has been paroled, filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against CDCR officials and employees at Correctional Training Facility ("CTF") where he was formerly incarcerated. Dkt. Nos. 1, 13. Plaintiff filed an amended complaint, Dkt. No. 15, which the Court deemed as operative complaint in this matter. Dkt. No. 16. Plaintiff has also been granted permission for electronic case-filing. *Id.*

///

---

[1] Plaintiff states that the proper spelling of his last name is "Lucus" and not "Lucas." Dkt. No. 13. The Court shall direct the Clerk to update the docket to reflect the correct spelling of Plaintiff's last name. *See infra* at 10.

# DISCUSSION

## A. Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

## B. Plaintiff's Claims

Plaintiff claims that beginning in 2018, the CDCR began to convert Sensitive Needs Yard ("SNY") inmates to General Population ("GP") at "Non-Designated Programming Facilities" ("NDPF"). Plaintiff claims this plan was published in several memoranda by Defendant Kathleen Allison, the Director of the Division of Adult Institutions, and Secretary Ralph Diaz. *Id.* at 2-3. Defendant Capt. Julie Garry was the designated point of contact in Defendant Diaz's memoranda. *Id.* at 3. Plaintiff was an SNY inmate. *Id.* at 4.

Plaintiff met with Defendant Laura Mendez, Correctional Counselor I, in early December 2018, to discuss his transfer to a NDPF. *Id.* at 3. Plaintiff claims he agreed to a transfer to CRC Norco, but at the actual hearing on December 14, 2018, for which he waived his appearance, Defendant Mendez placed him for a transfer to CTF's Facility D. *Id.* Plaintiff claims he was not advised of the change nor provided with a copy of the action that was taken, and therefore deprived of his right to due process. *Id.* at 3-4. Then on December 20, 2018, he was informed by Defendant Sgt. Stephens that he was being

2

1  transferred from Facility A to Facility D, and that Plaintiff had 10 minutes to gather his
2  property. *Id.* at 4.  Because Plaintiff was aware that many other inmates who had been
3  transferred from Facility A to Facility D just the day before were being hurt, he requested
4  protected administrative segregation ("ad-seg"). *Id.*  However, Defendant Stephens
5  informed him that if he refused to be moved, she was supposed to issue him a Rules
6  Violation Report ("RVR") for "refusing housing," that he would be deemed a "program
7  failure," transferred to a "Level III or IV" institution, and potentially lose good conduct
8  credits. *Id.*  Plaintiff claims he agreed to the transfer in order avoid this "retaliation." *Id.*
9  at 4-5.  He was moved to Facility D that same day. *Id.* at 5.  When he and several other
10 inmates arrived at Facility D, staff informed them that there had been multiple incidents
11 the day before and there had been at least 10 physical altercations in the last three days of
12 "converting." *Id.*  Defendant Warden Craig Koenig met with the inmates that afternoon to
13 discuss the situation. *Id.* at 5.  Defendant Koenig repeated the consequences for those who
14 refused housing in Facility D: they would be issued an RVR, deemed "program failures,"
15 and transferred to a higher security level institution. *Id.*  He agreed to house the new
16 transfers from Facility A together in Dorm 5, so they could protect one another and use
17 bathrooms and showers with less fear, as well as assigning an additional officer for
18 protection. *Id.* at 6.

19       The next day on December 21, 2018, Plaintiff and 9 other inmates were using the
20 phones when they were rushed by a group of 28 attackers. *Id.*  Plaintiff was kicked
21 repeatedly by five inmates, and suffered injuries to his head, face, neck, hands, and body.
22 *Id.*  He was also soaked with pepper spray by Defendant John Doe 1 who arrived on the
23 scene to quell the riot. *Id.*  Plaintiff was taken to medical triage, and then to Natividad
24 Hospital for evaluation and treatment. *Id.*  He was escorted by Defendant John Doe 2, who
25 did not allow him a change of clothes or a chance to wash the spray off his face or body.
26 *Id.*  At the hospital, he was diagnosed with a closed head injury but no broken bones. *Id.* at
27 6-7.  After he was returned to Facility D, he learned that several other inmates had suffered

various injuries. *Id.* at 7.  Fearful for his life, Plaintiff refused to return to his housing and was placed in ad-seg. *Id.*  Defendant John Doe 3 wrote on his ad-seg notice that the reason for the placement was "refusing house/program on a non-designated facility" due to "self-expressed" safety concerns, and that Plaintiff was involved in a riot. *Id.*  Plaintiff claims that Defendant Jane Doe twice refused to allow Plaintiff to decontaminate with a shower and get new clothes. *Id.*  Then at ad-seg, Defendant John Doe 4 gave him clothes that did not fit, forcing Plaintiff to wear his contaminated clothes, and denied Plaintiff a shower. *Id.*  Plaintiff was not allowed to shower until the next day, December 22, 2018, at 2 pm. *Id.*  Liberally construed, Plaintiff has stated cognizable claims for failure to protect from other inmates against Defendants Sgt. Stephens and Warden Craig Koenig, and excessive force against Defendant John Doe 1.  *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  The denial of showers by Defendants Jane Doe and John Doe 4 is also cognizable under § 1983 as a violation of the Eighth Amendment.  *See Toussaint v. McCarthy*, 597 F. Supp. 1388, 1411 (N.D. Cal. 1984), *aff'd in part and vacated in part*, 801 F.2d 1080 (9th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987); *Toussaint v. Rushen*, 553 F. Supp. 1365, 1385 (N.D. Cal. 1983), *aff'd in part and vacated in part*, 722 F.2d 1490 (9th Cir. 1984); *see also Shapley v. Wolff*, 568 F.2d 1310 (9th Cir. 1978).

Although the use of "John Doe" to identify a defendant is not favored in the Ninth Circuit, *see Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *Wiltsie v. Cal. Dep't of Corrections*, 406 F.2d 515, 518 (9th Cir. 1968), situations may arise where the identity of alleged defendants cannot be known prior to the filing of a complaint.  In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover their identities or that the complaint should be dismissed on other grounds.  *See Gillespie*, 629 F.2d at 642; *Velasquez v. Senko*, 643 F. Supp. 1172, 1180 (N.D. Cal. 1986).  It is clear from the complaint that Plaintiff simply needs basic discovery to obtain the names of Doe

4

Defendants, i.e., John Doe 1, John Doe 4, and Jane Doe. *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999). Plaintiff shall execute a reasonable discovery plan and failure to do so may be grounds for a motion for judgment on the pleadings or summary judgment. Accordingly, once named Defendants are served, Plaintiff must attempt to obtain the name of Doe Defendants through discovery and then move to add their names and request that they be served.

### A. Remaining Claims and Defendants

Plaintiff claims "illegal promulgation, deliberate indifference, failure to protect" against Defendants Allison, Diaz, and Garry for publishing the memoranda regarding the conversion of SNY to GP in NDPFs. Dkt. No. 15 at 2-3. According to the first memorandum dated December 12, 2017, by Defendant Allison and entitled "Non-Designated Programming Facility Expansions for 2018," the CDCR was "committed to expanding incentives to positive programming inmates, in coordination with rehabilitative efforts focused towards preparing individuals for greater personal success and societal integration." *Id.* at 12. The memorandum further states that the CDCR was "expanding efforts to provide robust programming to all inmates and to safely house individuals in the lowest level possible." *Id.* Prison administrators are entitled to "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). "We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a correctional system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). "In particular, federal courts should exercise restraint when reviewing management decisions taken by prison administrators to secure the safety of prisoners and state prison personnel." *Griffin v. Gomez*, 741 F.3d 10, 21 (9th Cir. 2014). Absent substantial evidence to the contrary, courts should defer to prison officials' judgment regarding prison

5

security and administration." *See Turner v. Safley*, 482 U.S. 78, 86 (1987). Prison regulations that infringe a prisoner's constitutional right are valid so long as they are "reasonably related to legitimate penological interests." *Id.* at 89; *see Pell v. Procunier*, 417 U.S. 817, 822-23 (1974) (identifying four central penological objectives as deterrence (by making incarceration undesirable), protection (by quarantining criminal offenders), rehabilitation, and ensuring internal security of the prison facility). Here, the plan for NDPF expansion set forth a legitimate penological interest in the rehabilitation of its positive programming inmates and to prepare them "for greater personal success and societal integration." Dkt. No. 15 as 12. Plaintiff's allegations, therefore, are not sufficient to establish that the NDPF expansion plan is otherwise invalid. *See Procunier*, 417 at 822-23. Accordingly, this claim must be dismissed for failure to state a claim.

With respect to the claim that his transfer to ad-seg was retaliatory based on his unwillingness to be housed in Facility D and that John Doe 3 falsified records, Dkt. No. 15 at 6, Plaintiff also fails to state sufficient facts to state a claim. The information provided with the complaint indicates that there were consequences for an inmate's refusal to comply with changes in housing. *See supra* at 2. As stated above, prison regulations that infringe on a prisoner's constitutional right are valid so long as they are "reasonably related to legitimate penological interests," which include rehabilitation and ensuring internal security of the prison facility. *Turner*, 482 U.S. at 89; *Procunier*, 417 U.S. at 822-23. Here, the memoranda clearly indicated that there would be consequences for non-compliance with rehousing, and Plaintiff admits that he refused his housing assignment to Facility D after his return from the hospital. As such, it cannot be said that Plaintiff's placement in ad-seg was retaliatory rather than in accordance with prison policy under the NDPF expansion. Furthermore, Plaintiff alleges that John Doe 3 falsified records, i.e., the ad-seg notice. Dkt. No. 15 at 7. However, after reviewing the ad-seg notice, the Court finds there is no information therein that contradicts Plaintiff's version of events. *Id.* at 84. Plaintiff was indeed "involved in the riot" in that he was one of the victims, and he admits

6

that he refused to be housed in Facility D due to self-expressed safety concerns. *Id.* Accordingly, this claim must also be dismissed for failure to state a claim.

Plaintiff also claims a due process violation against Defendant CCI Laura Mendez for changing his transfer from what he had agreed, and against Defendant Keith Henderson for approving her actions. Dkt. No. 15 at 3-4. However, there is no actionable claim because prisoners have no constitutional right to incarceration in a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976). A prisoner's liberty interests are sufficiently extinguished by his conviction that the state may generally confine or transfer him to any of its institutions, to prisons in another state or to federal prisons, without offending the Constitution. *See Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) (citing *Meachum*, 427 U.S. at 225) (intrastate prison transfer does not implicate Due Process Clause), and *Olim*, 461 U.S. at 244-48 (interstate prison transfer does not implicate Due Process Clause)). A non-consensual transfer is not per se violative of either due process or equal protection rights, *see Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991); *Stinson v. Nelson*, 525 F.2d 728, 730 (9th Cir. 1975), and no due process protections such as notice or a hearing need be afforded before a prisoner is transferred, even if the transfer is for disciplinary reasons or to a considerably less favorable institution, *see Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *see also Coakley v. Murphy*, 884 F.2d 1218, 1221 (9th Cir. 1989) (transfer from work release center back to prison does not implicate due process nor equal protection rights). "It is well settled that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002). Lastly, in California, there are no substantive limitations on prison officials' discretion to grant or refuse the transfer of prisoners. *See* Cal Penal Code § 5080; Cal. Code Regs. tit. 15, § 3379; *People v. Lara*, 155 Cal. App. 3d 570, 575-76 (1984). Accordingly, this due process claim based on a non-consensual transfer must be dismissed for failure to state a cognizable claim.

Plaintiff also claims "ADA qualified discrimination" against Defendants Mendez

7

and Henderson, claiming that due to the lack of notice, he could not ask for reasonable accommodations under the ADA. Dkt. No. 15 at 3-4. But as discussed above, the lack of notice did not violate Plaintiff's right to due process. Accordingly, it cannot be said that Defendants are also liable for Plaintiff's inability to request an ADA accommodation at that time, even assuming that he qualified for it. As such, this claim must also be dismissed for failure to state a claim.

Plaintiff also claims that his transfer had a negative impact on his programming and mental health treatment, depriving him of equal protection. Dkt. No. 15 at 4. However, Plaintiff fails to state sufficient facts to state an equal protection claim. When challenging his treatment with regard to other prisoners, courts have held that in order to present an equal protection claim a prisoner must allege that his treatment is invidiously dissimilar to that received by other inmates. *More v. Farrier*, 984 F.2d 269, 271-72 (8th Cir. 1993) (absent evidence of invidious discrimination, federal courts should defer to judgment of prison officials); *Timm v. Gunter*, 917 F.2d 1093, 1099 (8th Cir. 1990) (same). The first step in determining whether the inmate's equal protection rights were violated is to identify the relevant class of prisoners to which he belongs. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). The class must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified. *Id.* at 1031 (affirming district court's grant of defendants' motion for summary judgment because inmate failed to raise triable issue of fact that he was treated differently than any other inmate whom the officers did not know was entitled to a vegetarian meal). Here, Plaintiff makes no allegation with respect to what class of prisoners he belongs and how the treatment he received was dissimilar to that received by other inmates. Plaintiff shall be afforded one opportunity to file an amended complaint to attempt to allege sufficient facts to state a cognizable equal protection claim.

Plaintiff also claims that mentally ill people, like himself, are also targeted by GP inmates depending on their race or gang affiliation, such that forcing mentally ill people

8

into GP puts them at risk of serious injury and amounts to cruel and unusual punishment. Dkt. No. 15 at 5. However, this allegation is, at best, subsumed with his Eighth Amendment claim for failure to protect found cognizable above. *See supra* at 4. The Court notes that there is no allegation that Plaintiff's mental illness was the reason that he was attacked or that any Defendant was aware that his mental illness put him at a substantial risk of harm and yet failed to abate that risk. *See Farmer*, 511 U.S. at 847. If Plaintiff can in good faith do so, he may amend his Eighth Amendment claim to include a factual allegation that Defendants Stephens and Koenig subjectively knew that Plaintiff faced a substantial risk of serious harm due to his mental illness and disregarded that risk by failing to take reasonable measures to abate it. *See Hearns*, 413 F.3d at 1041-42.

### B.   Joinder

Plaintiff also challenges "raced based discrimination practices for housing and recreation areas," and other separate allegations that Defendants CCI Osborn and Lt. Galvan blocked his access to the courts in November 2019, by delaying his access to documents. Dkt. No. 15 at 8-9. However, it is clear that these claims raised against different defendants are not all related to the claims found cognizable above, *see supra* at 4, and do not all arise out of the same transaction, occurrence, or series of transactions or occurrences. Fed. R. Civ. P. 20(a)(2). Specifically, the failure to protect and excessive force claims are not related to the claims regarding race-based discrimination practices and denial of access to the courts. "A buckshot complaint that would be rejected if filed by a free person – say, a suit complaining that A defrauded plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions – should be rejected if filed by a prisoner." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (noting that, in prisoner complaint seeking to join 24 defendants and approximately 50 distinct claims, prisoner made no effort to show that 24 defendants he named had participated in the same transaction or series of transactions or that a question of fact is common to all defendants). Accordingly, the Court finds that these unrelated

claims against unrelated Defendants are improperly joined in this action and must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The complaint is **DISMISSED with leave to amend**. Within **twenty-eight (28) days** of the date this order is filed, Plaintiff shall file an amended complaint to correct the deficiencies with respect to some of the claims as discussed above, *i.e.*, the equal protection claim and the Eighth Amendment claim involving his mental illness. *See supra* at 7-8. Plaintiff may file a separate action to pursue the mis-joined claims identified above if he wishes. The amended complaint must include the caption and civil case number used in this order, Case No. C 19-07938 BLF (PR), and the words "AMENDED COMPLAINT" on the first page. If using the court form complaint, Plaintiff must answer all the questions on the form in order for the action to proceed.

The amended complaint supersedes the original, the latter being treated thereafter as non-existent. *Ramirez v. Cty. Of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Consequently, claims not included in an amended complaint are no longer claims and defendants not named in an amended complaint are no longer defendants. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.1992).

2. **In the alternative**, Plaintiff may file notice that he wishes to proceed solely with the failure to protect claim against Defendants Sgt. Stephens and Warden Craig Koenig and the cognizable claims against Doe Defendants, and strike the remaining claims from this action. With respect to the excessive force claim against Defendant John Doe 1, and the denial of showers claim against Defendants Jane Doe and John Doe 4, Plaintiff must execute a reasonable discovery plan to obtain the proper Defendants' names and then move to add their names to this action in order that they may be served.

The Court also notes that Plaintiff failed to include a request for specific relief. Dkt. No. 15. If he chooses this alternative, Plaintiff must file an amendment stating

10

exactly what type of relief he seeks through this action.

3. **Failure to respond in accordance with this order in the time provided will result in this action proceeding solely on the claims found cognizable above against Defendants Sgt. Stephens and Warden Craig Koenig, as well as the cognizable claims against Doe Defendants as discussed above. Plaintiff will be permitted to later amend the complaint to state the type of relief he seeks. All other claims and Defendants will be dismissed from this action.**

4. Plaintiff states that the proper spelling of his last name is "Lucus" and not "Lucas." Dkt. No. 13. The Clerk is directed to update the docket to reflect the correct spelling of Plaintiff's last name.

**IT IS SO ORDERED**

Dated: ___July 21 2020_____

BETH LABSON FREEMAN
United States District Judge

Order of Dismissal with Leave to Amend
PRO-SE\BLF\CR.19\07938Lucus_dwlta

11