UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE LUCUS,<br><br>    Plaintiff,<br><br>    v.<br><br>CRAIG KOENIG, et al.,<br><br>    Defendants. | Case No. 19-07938 BLF (PR)<br><br>**ORDER GRANTING MOTION TO DISMISS, DISMISSING REMAINING DEFENDANTS AND CLAIMS**<br><br>(Docket No. 25) |

Plaintiff, a California inmate who has been paroled, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983, against CDCR officials and employees at the Correctional Training Facility ("CTF") where he was formerly incarcerated. The amended complaint, Dkt. No. 15, is the operative complaint in this action. Dkt. No. 18. The Court found the amended complaint[1] stated a cognizable claim under the Eighth Amendment for

---

[1] The Court dismissed the amended complaint with leave to amend to correct the deficiencies with respect to an equal protection claim and an Eighth Amendment claim involving Plaintiff's mental illness, or in the alternative, to proceed solely on the failure to protect claim against Defendants Koenig and Stephens and claims against John Doe 1, Jane Doe, and John Doe 4, and strike the remaining claims. Dkt. No. 17 at 10. When Plaintiff failed to respond in the time provided, the Court ordered the matter to proceed on the cognizable claims. Dkt. No. 18.

1

failure to protect and ordered the matter served on Defendants Warden Craig Koenig and Sgt. Stephens.[2] *Id.* at 5. The Court also found cognizable excessive force and Eighth Amendment claims against Doe Defendants.[3] *Id.*

Defendant Koenig has filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff fails to state an Eighth Amendment claim against him, Defendant is entitled to qualified immunity, and he is immune from any claim for money damages under the Eleventh Amendment. Dkt. No. 25. Although given ample time to do so, Plaintiff has filed no opposition in this matter, and has had no further communication with the Court since filing the amended complaint.

For the reasons discussed below, Defendant's motion to dismiss is **GRANTED**.

## DISCUSSION

### I. <u>Plaintiff's Allegations</u>

Plaintiff claims that beginning in 2018, the CDCR began to convert Sensitive Needs Yard ("SNY") inmates to General Population ("GP") at "Non-Designated Programming Facilities" ("NDPF"). Dkt. No. 15 at 2. Plaintiff was an SNY inmate. *Id.* at 4. Plaintiff claims this plan was published in several memoranda by Kathleen Allison, the Director of the Division of Adult Institutions, and Secretary Ralph Diaz. *Id.* at 2-3. The purpose of the NDPFs was to maximize rehabilitative programming opportunities for inmates, such as more access to job assignments and educational resources. *Id.* at 2. The CDCR decided to expand implementation of the NDPFs at other institutions after it proved to be successful

---

[2] Defendant Stephens has not yet been served in this action. According to the Litigation Coordinator at CTF, Defendant Stephens no longer works at the facility. Dkt. No. 22. For the reasons discussed below, the claims against Defendant Stephens are also dismissed. *See infra* at 10-12.

[3] Plaintiff was directed to provide the names of Defendants John Doe 1, Jane Doe, and John Doe 4 by the dispositive motion date to avoid dismissal of the claims against them. Dkt. No. 18 at 5. Because Plaintiff has failed to respond, the Doe Defendants and the claims against them must be dismissed. *See infra* at 12-13.

2

at Richard J. Donovan Correctional Facility and the California Health Care Facility. *Id.*; *id.* at 24-27. On September 10, 2018, then-Secretary Diaz issued a memorandum announcing that CTF's Facility D would be converted to a NDPF in December 2018. *Id.* at 25.

Plaintiff met with Laura Mendez, Correctional Counselor I, in early December 2018, to discuss his transfer to a NDPF. *Id.* at 3. Plaintiff claims he agreed to a transfer to CRC Norco, but at the actual hearing on December 14, 2018, for which he waived his appearance, Counselor Mendez placed him for a transfer to CTF's Facility D. *Id.* Then on December 20, 2018, he was informed by Defendant Sgt. Stephens that he was being transferred from Facility A to Facility D, and that Plaintiff had 10 minutes to gather his property. *Id.* at 4. Plaintiff claims that he was aware that many other inmates who had been transferred from Facility A to Facility D just the day before were being hurt. *Id.* Plaintiff claims that also due to his "SNY history, mental illnesses, multiple reported incidents on Facility D, and information contained in [his] Central File," he informed Defendant Stephens that he would "not be safe from assault" and requested protected administrative segregation ("ad-seg"). *Id.* However, Defendant Stephens informed him that if he refused to be moved, she was supposed to issue him a Rules Violation Report ("RVR") for "refusing housing," that he would be deemed a "program failure," transferred to a "Level III or IV" institution, and potentially lose good conduct credits. *Id.* Plaintiff claims he agreed to the transfer in order avoid this "retaliation." *Id.* at 4-5. He was moved to Facility D that same day. *Id.* at 5.

When Plaintiff and several other inmates arrived at Facility D, staff informed them that there had been multiple incidents the day before and there had been at least 10 physical altercations in the last three days of "converting." *Id.* Later that afternoon, Defendant Warden Craig Koenig met with the inmates to discuss the situation, at which time "all" the inmates expressed concern for their safety and "pointed out the many

3

unprovoked targeted attacks towards" them. *Id.* at 5. Defendant Koenig explained the procedure for those who refused housing in Facility D due to safety concerns: they would be issued an RVR, deemed "program failures," and transferred to a higher security level institution. *Id.* Defendant Koenig also stated that if any inmate identified a specific individual who posed a threat, he would have them removed pending investigation. *Id*. He agreed to house the new transfers from Facility A together in Dorm 5, so they could protect one another and use bathrooms and showers with less fear, as well as assigning an additional officer for protection. *Id.* at 6.

The next day on December 21, 2018, Plaintiff and 9 other inmates were using the phones when they were rushed by a group of 28 attackers. *Id.* Plaintiff was kicked repeatedly by five inmates, and suffered injuries to his head, face, neck, hands, and body. *Id.* He was also soaked with pepper spray when officers arrived on the scene to quell the riot. *Id.* Plaintiff was taken to medical triage, and then to Natividad Hospital for evaluation and treatment. *Id.* At the hospital, he was diagnosed with a closed head injury but no broken bones. *Id.* at 6-7. After he was returned to Facility D, he learned that several other inmates had suffered various injuries. *Id.* at 7. Fearful for his life, Plaintiff refused to return to his housing and was placed in ad-seg. *Id.* Liberally construed, the Court found Plaintiff stated a cognizable claim for failure to protect from other inmates against Defendants Sgt. Stephens and Warden Craig Koenig. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994).

## II. Motion to Dismiss

In the motion to dismiss, Defendant Koenig argues that Plaintiff's claim against him in his official capacity is barred by the Eleventh Amendment, Plaintiff has failed to state an Eighth Amendment claim, and he is entitled to qualified immunity. Dkt. No. 25.

### A. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the

4

pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2) and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal for failure to state a claim is a ruling on a question of law. *See Parks School of Business, Inc., v. Symington*, 51 F.3d 1480, 1483 (9th Cir. 1995). "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *See Symington*, 51 F.3d at 1484. The court may consider "'allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal citation omitted).

Qualified immunity may be raised in a Rule 12(b)(6) motion and granted where defendants are entitled to the defense based on plaintiff's allegations. *Cousins v. Lockyer*, 568 F.3d 1063, 1071 (9th Cir. 2009).

### B. Official Capacity Claim for Damages

Defendant asserts that to the extent that Plaintiff is seeking damages, any official-capacity claim for damages is barred by the Eleventh Amendment. Dkt. No. 41 at 8-9.

The Eleventh Amendment to the U.S. Constitution bars a person from suing a state in federal court without the state's consent. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). The U.S. Supreme Court has held that state officials acting in their official capacities are not "persons" under Section 1983 because "a suit against a state official in his or her official capacity is not a suit against the official but

rather is a suit against the official's office." *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, such a suit is therefore no different from a suit against the state itself. *Id.* Accordingly, the Eleventh Amendment bars Plaintiff's claim for monetary relief to the extent that it is based on acts by Defendants in their official capacities. *See id.*; *Nesbit v. Dep't of Pub. Safety*, Nos 06-16428, 06-16623, 283 Fed. Appx. 531, 533 (9th Cir. 2008) (unpublished memorandum disposition) (concluding that the district court properly dismissed prisoners' claims against defendants acting in their official capacities). Therefore, Defendant's motion to dismiss Plaintiff's damages claims against him in his official capacity is GRANTED, and such claims are DISMISSED with prejudice. Because it is absolutely clear that this jurisdictional bar cannot be cured by further amendment to the complaint, the dismissal of Plaintiff's claims against any defendant in their official capacity is without leave to amend.

### C. Eighth Amendment Claim

Liberally construing Plaintiff's allegations, the Court found the complaint stated a failure to protect claim under the Eighth Amendment. Defendant asserts the allegations are deficient because Plaintiff does not allege that Defendant Koenig had any individual involvement in the decision to move Plaintiff from Facility A to Facility D. Dkt. No. 25 at 12. Defendant also asserts that there was no substantial risk of serious harm to Plaintiff from being housed in Facility D and his allegations regarding Defendant Koenig's knowledge are conclusory and fail to state a claim. *Id.* at 12-13. Furthermore, Defendant contends that Plaintiff fails to allege that Defendant Koenig knew or should have known of a specific risk to Plaintiff's safety. *Id.* at 13-17. Lastly, Defendant asserts that there was a reasonable justification for transferring Plaintiff in light of the conversion of certain facilities to NDPFs, and Defendant Koenig responded reasonably to the risk of harm to his safety. *Id.* at 17-18.

The Eighth Amendment requires that prison officials take reasonable measures to

guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833; *Cortez v. Skol*, 776 F. 3d 1046, 1050 (9th Cir. 2015); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005); *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982). The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837.

Allegations in a pro se complaint sufficient to raise an inference that the named prison officials knew that plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it state a failure-to-protect claim. *See Hearns*, 413 F.3d at 1041-42 (citing *Farmer*, 511 U.S. at 847).

Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the plaintiff can show that the defendant's actions both actually and proximately caused the deprivation of a federally protected right. *Lemire v. Cal. Dept. of Corrections & Rehabilitation*, 726 F.3d 1062, 1085 (9th Cir. 2013); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. *See Leer*, 844 F.2d at 633; *see, e.g.*, *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison official's failure to intervene to prevent 8th Amendment violation may be basis for liability).

Defendant's first contention is that Plaintiff failed to allege Defendant Koenig's

7

individual involvement in the decision to transfer him to a NDPF. Defendant is correct. Nowhere in the amended complaint does Plaintiff allege that Defendant Koenig was personally involved in the transfer, or that Plaintiff personally asked Defendant Koenig to transfer him back to Facility A and that Defendant denied the request. Accordingly, there is no allegation that Defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act that he was legally required to do that caused the Eighth Amendment deprivation. *See Leer*, 844 F.2d at 633. Furthermore, the fact that Defendant Koenig met with a group of inmates, which included Plaintiff, and heard their safety concerns does not establish that he actually or proximately caused the deprivation of Plaintiff's Eighth Amendment rights. *See Lemire*, 726 F.3d at 1085. Rather, Defendant Koenig acknowledged the inmates' general concerns, agreed to house them together within Facility D, and assured them that individuals who posed a threat would be removed and investigated. *See supra* at 3. There is no allegation that Plaintiff informed Defendant Koenig at that time of a specific threat from a specific individual, and that Defendant failed to act which resulted in harm to Plaintiff. Accordingly, it cannot be said that Plaintiff made sufficient allegations to establish Defendant Koenig's liability for Plaintiff's injuries from the December 21, 2018 attack based on a personal involvement in the decision to transfer him to a NDPF.

Even if Plaintiff were to allege that Defendant Koenig was involved in the decision to transfer him, there are still insufficient allegations to establish that such a decision violated the Eighth Amendment. With respect to the first prong for an Eighth Amendment claim, Defendant asserts that there was no substantial risk of serious harm to Plaintiff from being housed in Facility D. Defendant points to the exhibits attached to the amended complaint which show that before inmates are transferred to NDPFs, each inmate's case factors are reviewed to ensure that only inmates "demonstrating programming efforts and a desire to not get involved in the destructive cycles of violence" are transferred to an NDPF,

8

in order to "safely house individuals in the lowest level possible." Dkt. No. 25 at 13, citing Dkt. No. 15 at 24. Defendant contends that lower-level security inmates who have demonstrated that they will program violence-free "do not, objectively, pose a threat of serious and specific harm" to Plaintiff. Dkt. No. 25 at 13. Defendant asserts, therefore, that Plaintiff's claim amounts to nothing more than a speculative and generalized fear of harm at the hands of other prisoners, which is not enough to state an Eighth Amendment claim. *Id.* However, Plaintiff alleges that there had been multiple incidents of physical altercations in the last few days of "converting" of which the staff was aware. *See supra* at 3. The fact that Defendant Koenig personally met with the inmates and addressed their safety concerns indicates acknowledgment of the existence of some objective risk of harm to Plaintiff and these other transferred inmates. Accordingly, construing the facts in the light most favorable to Plaintiff, his allegations satisfy the first prong.

However, Plaintiff fails to satisfy the second subjective prong, *i.e.*, that Defendant Koenig knew of and disregarded an excessive risk to Plaintiff's safety by failing to take reasonable steps to abate it. Plaintiff claims that based on the meeting with the transferred inmates on December 20, 2018, Defendant Koenig "knew there was an extreme threat to our safety even without specific individuals being identified and he acted with deliberate indifference to our needs." Dkt. No. 15 at 6. Plaintiff also asserts that the fact that there had been multiple incidents the day before and during the month preceding his transfer was sufficient for Defendant Koenig to be aware of a threat to Plaintiff's safety. *Id.* at 5. However, as Defendant points out, Plaintiff fails to allege the reasons why those other inmates were attacked, e.g., whether they were attacked because they were classified SNY, or if and how Plaintiff was similarly situated with those inmates so that one could conclude that the prior attacks on other inmates necessarily infer a future attack on Plaintiff or inmates with the same SNY designation. Dkt. No. 25 at 15. As Plaintiff states in the complaint, "[t]here are many reasons why an inmate may be placed in SNY/PC for the

9

safety and security of GP institutions," Dkt. No. 15 at 2, such that an attack on one SNY inmate does not mean that all SNY inmates are at risk of future attacks. As Defendant asserts, what may happen to one inmate may be for reasons totally different than another inmate. Dkt. No 25 at 15. Furthermore, Defendant Koenig's actions at the meeting with the transferred inmates does not establish that he had knowledge of and disregarded a specific risk to Plaintiff, or that such a risk was obvious to Defendant. Rather, Plaintiff makes no allegation that Defendant Koenig knew or was made aware of a *specific* threat to Plaintiff because of his SNY designation. In fact, Plaintiff does not allege that he was attacked the following day because of the NDPF program itself and his SNY designation. Plaintiff also does not allege that the inmates who attacked him were GP inmates who intentionally targeted SNY inmates. Furthermore, Plaintiff's allegations indicate that Defendant Koenig did not disregard an excessive risk of harm to the transferred inmates but rather implemented several safety measures to increase their safety, *i.e.*, he agreed to house the inmates together and provided an additional officer for the building. *See supra* at 3. He also assured them that any individual inmate whom they identified as a potential threat would be removed and investigated. *Id.* Accordingly, Plaintiff's allegations show that Defendant Koenig took reasonable steps to abate the risk of harm to the transferred inmates, including Plaintiff, which is not deliberate indifference.[4]

Based on the foregoing, Defendant's motion to dismiss the Eighth Amendment claim for failure to state a claim should be granted. Plaintiff has filed no opposition to Defendant's motion to argue otherwise, or to assert that he could remedy the deficiencies discussed above if granted another opportunity to amend. Even if he did, the Court would not be amenable to granting another opportunity where Plaintiff has already filed an

---

[4] Because the Court finds that the allegations are not sufficient to establish that Defendant Koenig had actual knowledge of a substantial risk to Plaintiff's safety, it is not necessary to discuss Defendant's argument that there was a reasonable justification for transferring Plaintiff or that Defendant responded reasonably to the risk of harm to Plaintiff. Dkt. No. 25 at 17.

amended complaint. *See Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003) (district court's discretion to deny leave to amend particularly broad where plaintiff has previously filed an amended complaint); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

Because the Court finds Plaintiff has not established a constitutional violation, it is unnecessary to address Defendant's qualified immunity argument on this claim. Dkt. No. 25 at 18-20.

### III. Unserved Defendant Stephens

According to the CTF Litigation Coordinator, Defendant Stephens no longer works at the facility. Dkt. No. 22. Accordingly, Defendant Stephens remains unserved in this action.

The district court may, on its own motion, grant a motion to dismiss as to defendants who have not moved to dismiss where such defendants are in a similar position to that of moving defendants. *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981). First of all, Defendant Stephens is in a similar position as the moving Defendant with respect to the official capacity claims for damages, which are barred by the Eleventh Amendment. *See supra* at 5-6. Accordingly, Plaintiff's damage claim against Defendant Stephens in her official capacity must also be dismissed with prejudice.

Secondly, Defendant Stephens is in a similar position as Defendant Koenig who has moved to dismiss the Eighth Amendment claim against him for failure to state a claim. *See supra* at 10. Plaintiff claims he informed Defendant Stephens that he would not be safe from assault due to his SNY history, mental illnesses, multiple reported incidents on Facility D, and information in his Central File, and requested protected administrative segregation. *Id.* at 3. Plaintiff claims Defendant Stephens acted with deliberate indifferent to his safety needs and requests because "any reasonable officer would know I would be at excessive risk or extreme violence by GP inmates." Dkt. No. 15 at 4. Subsequently,

11

Plaintiff was attacked on December 21, 2018. Therefore, Defendant Stephens is in a position similar to Defendant Koenig because Plaintiff's Eighth Amendment claim against both of them are based on the same underlying incident.

As discussed above, even if Plaintiff's allegations were sufficient to satisfy the first prong for an Eighth Amendment claim, there are no allegations to satisfy the second subjective prong. *See supra* at 9. Plaintiff claims that officers had told him that many other inmates were sent from Facility A to Facility D the day before, and that "many people" were being hurt. Dkt. No. 15 at 4. But as pointed out above, there is no allegation that these recent incidents involved GP inmates attacking SNY inmates. *See supra* at 9-10. Nor does Plaintiff allege that Defendant Stephens was aware of a substantial risk of harm to Plaintiff because he was similarly situated with those inmates such that she made the inference that a future attack on Plaintiff based on his SNY designation was likely, and yet failed to take reasonable steps to abate it. Rather, his allegation is essentially that Defendant Stephens *should have known* based on what he claims a reasonable officer "would know" under the circumstances. *See supra* at 11. Accordingly, it cannot be said that Plaintiff has satisfied the second prong with respect to Eighth Amendment claim against Defendant Stephens where he has failed to allege that Defendant Stephens had actual knowledge of and disregarded an excessive risk to Plaintiff's safety. Accordingly, the Court *sua sponte* grants the motion to dismiss in favor of Defendant Stephens who is in a similar position as moving Defendant Koenig with respect to the Eleventh Amendment bar and the failure to state an Eighth Amendment claim. *See Silverton*, 644 F.2d at 1345.

## IV. Unidentified Doe Defendants

The Court also found cognizable excessive force and Eighth Amendment claims in the amended complaint against John Doe 1, Jane Doe, and John Doe 4. Dkt. No. 18 at 4. Plaintiff was directed to provide the Court with the names of these Doe Defendants by the dispositive motion date set in the briefing order, *i.e.*, no later than December 1, 2020. *Id.*

12

at 5. Plaintiff was advised that failure to do so would result in the dismissal of these Doe Defendants without prejudice to Plaintiff filing a new action against them. *Id.* Since Plaintiff has failed to respond in the time provided, these Doe Defendants and the claims against them are DISMISSED without prejudice to Plaintiff filing a new action against them.

## CONCLUSION

For the reasons stated above, Defendant C. Koenig's motion to dismiss is **GRANTED**. Dkt. No. 25. The motion is also granted with respect to unserved Defendant Stephens who is in a position similar to the moving Defendant. All claims for damages against them in their official capacities are **DISMISSED with prejudice** as barred by the Eleventh Amendment. The Eighth Amendment claim against them is **DISMISSED with prejudice** for failure to state a claim. The excessive force and Eighth Amendment claims against John Doe 1, Jane Doe, and John Doe 4 are **DISMISSED without prejudice** to filing in a new action.

This order terminates Docket No. 25.

**IT IS SO ORDERED.**

Dated: __June 4, 2021_____

BETH LABSON FREEMAN
United States District Judge

Order Granting MTD; Dism. Remaining Claims and Defs.
PRO-SE\BLF\CR.19\07938Lucus_grant.mtd